UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DONNA STEMMERMANN,

                              **MEMORANDUM & ORDER**

                Plaintiff,

v.                                             1:13-CV-241 (SLT)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,
                Defendant.
------------------------------------------------------------------x

**TOWNES, United States District Judge:**

Plaintiff Donna Stemmermann ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final decision of acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner"), which held that Plaintiff was ineligible for disability insurance benefits under Title II of the Social Security Act ("the Act"). The Commissioner found that Plaintiff had medically determinable impairments of anxiety, obesity, diabetes, neuropathy, degenerative disc disease, herniated disc, hypertension, and unspecified neurological disorders, but that none of these impairments were severe prior to the date last insured, March 30, 2009. (R. 29-32). Plaintiff and Commissioner now cross-move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Administrative Law Judge ("ALJ") failed to fully develop the record and properly assess Plaintiff's credibility, defendant's motion is denied. Plaintiff's motion for judgment on the pleadings is granted to the extent it seeks remand and this case is remanded to the Commissioner on the grounds set forth below.

## BACKGROUND

**A. Procedural History**

1

Plaintiff filed a Social Security Disability benefits application on July 16, 2010, alleging disability since December 31, 2007. (R. 112-13). Her claim was denied on November 4, 2010. (R. 58-69). Plaintiff then requested a hearing on November 9, 2010. (R. 70-71). On August 24, 2011, the hearing was held before ALJ Andrew Wiess. (R. 37-54). ALJ Wiess considered the application *de novo* and decided on September 15, 2011, that Plaintiff was not disabled on or before the date last insured, March 30, 2009. (R. 27-36). The Appeals Council denied Plaintiff's request for review on November 13, 2012 and adopted ALJ Weiss's decision as the final decision of the Commissioner. (R. 1-7).

## B. Plaintiff's Education and Work History

Plaintiff is a high school graduate born in 1965. (R. 320). She worked as a certified nursing assistant and a home health care aide from 1997-2007. (R. 41, 125, 132-36, 161). Plaintiff stated that she stopped working in 2007 because there was not enough work. (R. 41; *see also* R. 353). She also claimed that she stopped working at this time because of anxiety attacks (R. 48), back spasms (*see* R. 322), and "numbness in her leg" (R. 43). She described her right leg numbness as "pains, spasm, and numbness down my right hip, leg, foot, all the way down" and occurring "every day." (R. 51).

## C. Plaintiff's Medical History

### 1. Medical Records Prior to Alleged Disability Onset Date of December 31, 2007

#### a. South Shore Neurologic Associates, P.C.

Plaintiff submitted medical records from South Shore Neurological Associates to the Appeals Council after ALJ Weiss found that Plaintiff was not disabled. Mark Gudesblatt, M.D., evaluated Plaintiff on January 9, 2007 for neck and shoulder pain. (R. 619). Plaintiff stated that while lifting herself up in September 2006, she felt pain at the base of her neck and left shoulder

region extending down to her arm and fingers. *Id.* She also developed numbness of her right leg and an unsteady feeling while walking. *Id.* Dr. Gudesblatt believed that cervical myofascial pain and radiculopathy, likely at the C6-7 level, caused her left arm pain and numbness. *Id.* He also opined that she likely had right carpal tunnel syndrome and possible upper lumbar radiculopathy related to independent lumbar disc problems. (R. 620-21).

An electromyogram ("EMG")/nerve conduction study ("NCS") of Plaintiff's upper extremities on January 17, 2007 showed moderate bilateral carpal tunnel syndrome (greater on the right), which had not resulted in any significant axonal degeneration. (R. 624-25). An EMG and NCS of Plaintiff's lower extremities from January 30, 2007, was normal, without evidence of lumbosacral radiculopathy, plexopathy, polyneuropathy, or myopathy. (R. 617; 622-23).

On March 21, 2007 at a follow-up visit to Dr. Gudeblatt's office, Plaintiff told Clifford Miller, Family Nurse Practitioner that her neck, left shoulder, and arm pain had resolved. (R. 616). She continued to have some numbness in her right leg, but no pain or weakness. *Id.* Her motor strength was full (five out of five) and her motor tone was normal. (R. 617). Miller's diagnostic impression included: cervical myofascial pain and radiculopathy, resolved; residual right hand tingling with evidence for carpal tunnel syndrome (greater on the right); and right leg numbness with no electrophysiological evidence for radiculopathy but documented disc herniation on magnetic resonance imaging ("MRI"). *Id.* He recommended a cervical MRI and prescribed Xanax for Plaintiff to take before the MRI. (R. 618).

### 2. Medical Records During the Alleged Disability Period (December 31, 2007 through March 30, 2009)

#### a. Dr. Vinod Gulati, M.D. — Treating Physician

Dr. Gulati began treating Plaintiff in October 2005. (R. 320). Prior to her alleged onset date (December 31, 2007), Plaintiff saw Dr. Gulati for anemia (menstruation induced), an acute sinus infection, obesity, and hypertension. (R. 319-20).

Plaintiff saw Registered Physician's Assistant Ann Lloyd at Dr. Gulati's office ten times between January and September 2008. (R. 318, 320, 321). On January 16, 2008, Lloyd recorded that Plaintiff had a blood pressure of 140/80, weighed 341 pounds, was neurologically intact, and her reflexes were unimpaired. (R. 321). The following month, on February 27, 2008, Lloyd noted that Plaintiff was recently diagnosed with diabetes mellitus and was taking an anti-diabetic (Glucophage) and an angiotensin-converting enzyme inhibitor ( Lisinopril) to treat hypertension. *Id.* She had a blood pressure of 130/80 and weighed 317 pounds; Plaintiff apparently had lost twenty-five pounds in six weeks by participating in Weight Watchers. *Id.* She was diagnosed with hypertension and diabetes. *Id.* On April 30, 2008, Plaintiff complained of severe anxiety and stated that depression and anxiety ran in her family. (R. 318). She weighed 296 pounds, having lost an additional twenty-one pounds. *Id.* Lloyd noted that her abdomen was obese and that her legs showed 1+ edema. *Id.* Lloyd diagnosed Plaintiff with anxiety, diabetes, hyperlipidemia, and a herniated lumbosacral disc. *Id.* Lloyd prescribed Xanax for Plaintiff's anxiety and gave her a "handicap stick"[1] for her herniated discs. *Id.* Plaintiff returned to Lloyd on June 25, 2008 and August 6, 2008 for routine blood work, and September 16, 2008 for a blood pressure check. *Id.* Lloyd reported that Plaintiff's blood pressure was normal during these

---

[1] In her papers, Plaintiff calls this a "handicap sticker," (Pl. Mem. at 11; R. 318), while Defendant refers to this as a parking permit, (Def.'s Mem. at 17). Lloyd's notation in her April 30, 2008 medical report is that Plaintiff was diagnosed with a herniated lumbosacral disc and given a "handicap stick," (R. 318), which may mean a handicap parking permit or a walking stick. Whether it was a stick or a sticker makes no difference to this Court's analysis.

4

visits. *Id.* On September 16, 2008 Plaintiff weighed 269 pounds, had clear lungs, and her extremities revealed no edema. *Id.*

### 3. Medical Records After the Date Last Insured, March 30, 2009

#### a. Dr. Siby Cherian, M.D. at Dr. Gulati's office

On July 10, 2009, Plaintiff saw Dr. Cherian for pharyngitis. (R. 322). Dr. Cherian noted that Plaintiff had been noncompliant with her visits, was "seeing somebody else on the outside" to get her prescriptions, and stopped taking her Metformin because she lost weight and her sugar improved. *Id.*

During a routine checkup on September 3, 2009, Dr. Cherian noted that Plaintiff quit her job because of back spasms. *Id.* Plaintiff described having right sided lower extremity muscle spasms triggered by prolonged standing, which limited her ability to do work and house work. *Id.* Dr. Cherian diagnosed her with morbid obesity, diabetes, lumbar disc herniation with neuropathy, and anxiety. *Id.* Dr. Cherian prescribed Xanax and advised Plaintiff to try and lose weight and to see a neurologist and a psychiatrist for her anxiety disorder. *Id.*

#### b. Island Orthopaedics and Sports Medicine — Dr. Barinder Mahal

On March 12, 2010, Plaintiff saw Dr. Mahal for examination regarding paresthesia and pain in her right leg, which she claimed she had been experiencing for three years and had worsened. (R. 176-79, *repeated at* 301-13). Plaintiff told Dr. Mahal that she had: an EMG, which revealed carpal tunnel syndrome with normal limits; and x-rays, which showed osteoarthritic changes, slipped disc, and degenerative changes of the cervical spine. (R. 177). She weighed 317 pounds, walked without an assistive device, could get on and off the examination table independently, and had a non-antalgic gait and a normal cadence. *Id.* Her muscle strength in her hips, knees, ankles, and first toe was full (five out of five). *Id.* Her knee

and ankle reflexes were 2+ and equal and she did not have tenderness around her lower back, pelvis, and hips. *Id.* Dr. Mahal suspected she had right lumbosacral radiculopathy and underlying diabetic neuropathy; Dr. Mahal gave Plaintiff a sample of Celebrex and recommended that she participate in physical therapy. *Id.* The doctor noted that Plaintiff denied any pain, but complained more of paresthesia. *Id.* Plaintiff began her physical therapy program for her back on April 6, 2010. (*See* R. 182-202).

### c. Dr. Vinod Gulati, M.D. — Treating Physician

On May 26, 2010, Plaintiff sustained injuries to her chest wall, back, and left leg after being hit by a car while trying to get into her car. (R. 323, 358). She returned to Dr. Gulati on May 27, 2010 and complained of significant neck pain and shoulder numbness. *Id.* She had neck and right shoulder bruising with large areas of redness and tenderness and was prescribed Keflex and Motrin. *Id.* During follow-up visits on June 6 and June 19, 2010, she was diagnosed with tendinitis of the right shoulder and left leg lacerations. (R. 324).

### d. Island Orthopaedics and Sports Medicine — Dr. Michael P. Carroll, Orthopedist

On June 18, 2010, Plaintiff was examined by Dr. Carroll, an orthopedist. (R. 324). Plaintiff reported that she had developed neck, shoulder, and back pain from the accident. *Id.* Examination revealed that she had cervical spine stiffness and pain during cervical and right shoulder motion. *Id.* Dr. Carroll injected Cortisone into Plaintiff's shoulder, prescribed physical therapy, and diagnosed her with an acute cervical sprain, right shoulder sprain, and exacerbation of lumbar radiculopathy. *Id.*

### e. Dr. Erlinda Austria, M.D. — Social Security Administration ("SSA") Consultative Examiner

At the Social Security Administration's request, Dr. Austria evaluated Plaintiff on October 27, 2010. (R. 358-62). Dr. Austria noted that Plaintiff used no assistive device during the evaluation, squatted three fourths of the way, needed no help changing for the exam, could get on the examining table with no help, and had a normal gait and station. (R. 358). Dr. Austria described limited range of motion in Plaintiff's cervical spine, shoulders, and lumbar spine. (R. 360). The doctor also diagnosed injuries to Plaintiff's neck, back, shoulders, herniated and bulging cervical disc, and herniated and bulging lumbar disc with stenosis and nerve impingement. *Id.* Dr. Austria believed that Plaintiff had mild restrictions in activities involving the head and neck, minimal to mild restrictions involving the upper extremities, and minimal to mild restrictions in squatting, bending, prolonged sitting, standing, and walking, and mild restrictions involving the knees. (R. 361).

### f. Dr. Paul Herman, Ph. D. — SSA Consultative Psychologist

On October 27, 2010, Dr. Herman, a psychologist, also evaluated Plaintiff at the Social Security Administration's request. (R. 353-57). According to Dr. Herman's notes, Plaintiff saw a psychiatrist briefly in 1992 and was in treatment sporadically; she was on medication for some number of years but was not seeing a mental health professional. (R. 353). Dr. Herman stated that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks, maintain low-level employment, maintain a regular schedule, learn new tasks, make appropriate decisions, and relate with others. (R. 355). He also reported that she might have difficulty with stress or complex tasks. *Id.* He diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (R. 356).

### g. Dr. W. Skranovski

On November 3, 2010, agency review psychiatrist, Dr. W. Skranovski, completed a Psychiatric Technique Review form. (R. 424-34). The records do not indicate that Dr. Skranovski examined Plaintiff, nor do they indicate what medical records Dr. Skranovski reviewed. *Id.* Dr. Skranovski reported that Plaintiff was able to "carry out tasks, interact socially in a work setting, adapt to changes, travel alone, manage funds, follow instructions, and deal with authority figures." (R. 437). Dr. Skranovski also noted that the Consultative Examination report showed that Plaintiff had intact concentration and social skills. *Id.* In assessing Plaintiff's functional limitations as a result of Plaintiff's alleged anxiety, Dr. Skranovski found that Plaintiff had no limitations on her activities of daily living; social functioning; and concentration, persistence, or pace. (R. 434). Dr. Skranovski also reported that Plaintiff had no repeated episodes of detoriation. *Id.* Accordingly, Dr. Skranovski concluded that the objective data showed no related functional limitations as a result of her alleged anxiety and that Plaintiff's affective disorder did not meet or equal the criteria in the Listing of Impairments. (R. 427, 436).

### h. Dr. Octavian Austriacu, D.O. — Examining Physician

At the Social Security Administration's request, Dr. Austriacu examined Plaintiff on July 15, 2011 and completed a Multiple Impairment Questionnaire on August 8, 2011. (R. 607-14). Dr. Austriacu diagnosed Plaintiff with discopathy, radiculopathy, chronic back strain, right knee arthopathy, morbid obesity, and hypertension. (R.607). Clinical results included decreased range of motion and increased tenderness in the cervical and lumbar spine, decreased motion in the right knee, and increased knee swelling. *Id.* Plaintiff's primary symptoms were chronic neck pain radiating to her upper extremities; chronic stiffness and weakness of her upper extremities; chronic lower back pain radiating to her lower extremities; and chronic right knee pain,

8

weakness, and swelling. *Id.* Her pain ranged from moderate to severe (six to nine on a ten-point scale) and her fatigue was rated as moderate (four to five on a ten-point scale). (R. 609).

Furthermore, Dr. Austriacu opined that Plaintiff was able to sit two hours total and stand/walk less than one hour total in an eight-hour workday. *Id.* When sitting, she needed to get up and move around every fifteen to twenty minutes and could not sit again for ten to fifteen minutes. (R. 609-10). She could also occasionally lift and carry ten pounds. (R. 610). Dr. Austriacu also reported that Plaintiff was limited in repetitive reaching, handling, fingering, and lifting due to pain in her neck, shoulders, and upper extremities. *Id.* Dr. Austriacu believed that she was markedly limited (defined as effectively precluded) in using her upper extremities for reaching and moderately limited (defined as significantly limited) in performing grasping, turning, and twisting of objects, and in fine manipulations. (R. 610-11). Dr. Austriacu also stated that Plaintiff's pain, fatigue, or other symptoms were "constantly" severe enough to interfere with her attention and concentration. (R. 612). The report indicated that she required breaks to rest every ten to twenty minutes during an eight-hour workday for ten to twenty minutes each time. *Id.*

Plaintiff submitted an initial June 4, 2012 examination by Barry Gruber, M.D. (three years after the relevant period). (R. 628-31). Plaintiff also submitted a July 16, 2012 follow-up report to the Appeals Council. *Id.*

### D. The ALJ's Decision

On September 15, 2011, ALJ Weiss denied Plaintiff's application. (R. 29-32). In making this decision, the ALJ applied the required five step analysis. *See* 20 C.F.R. § 404.1520 (2003); (R. 27-33). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 31, 2007 through her

9

date last insured of March 30, 2009. (R. 29). At step two, the ALJ found that Plaintiff had medically determinable impairments of anxiety, diabetes, neuropathy, degenerative disc disease, herniated disc, hypertension, and unspecified neurological disorders, but found that none of these impairments were sever prior to the date last insured, March 30, 2009. *Id.*

## DISCUSSION

### A. Standard of Review for the Commissioner's Decision

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When reviewing the Commissioner's decision, this Court is limited to whether the decision was supported by substantial evidence in the record and was based on the correct legal standard. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (internal quotations removed). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C § 405(g); *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

## B. Standard of Review for Disability Determinations

In order to gain federal disability benefits under the Act, a claimant must establish that she has a "disability." *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Under the Act, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). To be eligible to receive benefits, "an applicant must be 'insured for disability insurance benefits.'" *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. §§ 423(a)(1)(A) & 423(c)(1)). Here, the parties do not contest that Plaintiff last met the requirements for "insured status" on March 30, 2009. (R. 29). Thus, Plaintiff must prove that she was disabled within the meaning of the Social Security Act on or before that date.

When evaluating a claim for disability benefits, the ALJ must follow the five-step procedure set forth by the Commissioner's regulations to determine:

> (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002); *see also Shaw*, 221 F.3d at 132. The claimant bears the burden of proof of the first four steps of the inquiry, but the Commissioner bears the burden in the fifth step. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see also Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).

11

Plaintiff contends that the Commissioner's decision should be reversed. She argues that the ALJ made a determination about the severity of her impairments and assessed her credibility without adequately developing the record.

### C. The ALJ failed to develop the record by not obtaining from the treating physician expert opinions as to the nature and severity of the claimed disabilities.

"Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (*quoting Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)). The Commissioner's regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history ... [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d) (2014). Accordingly, "the duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule." *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (alterations in original) (quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991)). "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is 'all the more important.'" *Khan v. Astrue*, No. 11-CV-5118 (MKB), 2013 WL 3938242, at *16 (E.D.N.Y. July 30, 2013) (quoting *Rocchio v. Astrue*, No. 08–CV–3796, 2010 WL 5563842, at *11 (S.D.N.Y. Nov.19, 2010)) (citation omitted), *report and recommendation adopted,* No. 08–CV–3796, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011). An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." *Khan*, 2013 WL 3938242, at *16 *(quoting Green v.*

*Astrue*, No. 08–CV8435, 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012)) *report and report and recommendation adopted*, No. 08–CV–8435, 2012 WL 3069570 (S.D.N.Y. July 26, 2012); *accord Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009).

"The regulations also state that,'[w]hen the evidence we receive from your treating physician ... or other medical source is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... or other medical source to determine whether the additional information we need is readily available.'" *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(e) (2014)). As the Court in *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) explained,

> What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. It is the opinion of the treating physician that is to be sought; it is his opinion as to the existence and severity of a disability that is to be given deference. . . . [T]he duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

Here, the ALJ failed to develop the record by not obtaining an expert opinion from Plaintiff's treating physician, Dr. Gulati, about the onset date of the limitations and the existence, nature, and severity of the alleged disability during the relevant period at issue. Additionally, although the opinions of a physician's assistant "do not demand the same deference as those of a treating physician," their opinions are considered "other sources" under the regulations, which an ALJ is "free to consider ... in making his overall assessment of a claimant's impairments." *Genier v.*

13

*Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. §§ 416.913(d)(1)); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (An ALJ may consider evidence from a physician's assistant in determining "the severity of [claimant's] impairment(s) and how it affects [claimant's] ability to work."). Here, the ALJ could have developed the record more adequately by obtaining evidence regarding the severity of Plaintiff's impairments and how it affected her ability to do work from Dr. Gulati's Registered Physician's Assistant, Anne Lloyd, who had seen Plaintiff ten times during the alleged disability period. (R. 318, 320, 321).

Where, as here, an ALJ "fail[s] to obtain adequate information from [the plaintiff's] treating physician," and it is clear that "'further findings' would so plainly help to assure the proper disposition of [the plaintiff's] claim," remand for further development of the evidence is required. *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999). Accordingly, this matter is remanded to the Commissioner for further development of the evidence.

### D. The ALJ failed to develop the record regarding Plaintiff's subjective symptoms and limitations, and improperly assessed Plaintiff's credibility.

Plaintiff also argues that the ALJ failed to properly assess her credibility. When determining whether or not a disability exists, the Commissioner's regulations require that an ALJ consider a claimant's laboratory results and observable and reported symptoms. 20 C.F.R. § 404.1529 (2011). The ALJ must utilize a two-step analysis by first determining whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a); *see also* S.S.R. 96–7p[2]. Specifically, the claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness will not be found to affect [her] ability to do basic work unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §

---

[2] *Available at* http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html.

416.929(b) (2011). Second, if medically determinable impairments are found, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the degree to which they limit the plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(c) (2011); SSR 96–7p.

"[A]n individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." *Cook v. Astrue*, No. 11-CV-479 (ARR), 2012 WL 715966, at *7 (E.D.N.Y. Mar. 2, 2012). Therefore, an ALJ should consider the factors listed in the regulations in assessing the credibility of a claimant's statements about her own condition:

> 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

S.S.R. 96–7p; 20 C.F.R. §§ 404.1529(c) (2011). Additionally, "[a] finding that a witness is not credible must [be] set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)).

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms;" however, he found that her statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible to

15

the disabling extent alleged. (R. 31). He reasoned that: (1) her allegedly limited daily activities cannot be objectively verified and (2) "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition as opposed to other reasons in view of the relatively weak medical evidence from prior to the date last insured." *Id.* The ALJ erred with respect to Plaintiff's credibility in two ways.

First, the ALJ failed to develop the record with respect to Plaintiff's subjective symptoms prior to discrediting Plaintiff. When an ALJ fails to sufficiently explore the facts underlying a claim, courts have not hesitated to remand. In *Hankerson v. Harris*, 636 F.2d 893, 895-96 (2d Cir. 1980), the Court remanded because the ALJ failed to question the plaintiff about various aspects of her testimony regarding subjective physical symptoms and the ALJ failed to obtain a more detailed statement from the plaintiff's treating physician regarding the extent of these symptoms. The Court in *Hankerson*, explained that "where medical records before the ALJ contained a number of references to plaintiff's subjective symptoms, it was particularly important that the ALJ explore these symptoms with plaintiff so the ALJ could effectively exercise his discretion to evaluate the credibility . . . of (the) claimant." *Id.* (internal quotation mark omitted). Similarly, in *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 353-56 (E.D.N.Y. 2010), the Court remanded and ordered the ALJ to explore the specific nature of Plaintiff's subjective complaints and limitations during the relevant period. The *Hilsdorf* Court reasoned that where an ALJ fails to properly consider the plaintiff's subjective complaints of pain, the ALJ's decision discrediting plaintiff's subjective complaints is not supported by substantial evidence. *Id.*

The ALJ here failed to ask Plaintiff about any of her physical symptoms during the alleged disability period. (R. 39-48). While the ALJ recounted some of Plaintiff's *present*

16

limitations, he failed to clarify the effect Plaintiff's alleged limitations had on any of Plaintiff's daily activities *during the alleged disability period*. Rather than asking Plaintiff about her physical symptoms during the relevant period, the ALJ only questioned her about her anxiety issues. *Id.* Although the medical records from the relevant alleged disability period did not expressly state that Plaintiff suffered significant physical functional limitations, the ALJ should have questioned Plaintiff on any possible affect her diagnosed obesity, herniated disc, hypertension, and diabetes had on her ability to work. *Id.* On remand, the ALJ should further develop the record, with respect to Plaintiff's subjective complaints and limitations during the relevant period, to more effectively evaluate Plaintiff's credibility. *See Hankerson*, 636 F.2d at 895-96; *Hilsdorf*, 724 F. Supp. 2d at 356.

Second, the ALJ did not consider all of the factors delineated in SSR 96–7p, which states that "the adjudicator *must* consider [seven factors] in addition to the objective medical evidence when assessing the credibility of an individual's statements." (emphasis added). Indeed, in *Wright v. Astrue*, No. 06-CV-6014, 2008 WL 620733, at *3 (E.D.N.Y March 5, 2008), the Court found it was reversible error for the ALJ to consider only one of the seven factors.

Here, the SSR 96–7p factors that the ALJ addressed included: (1) Plaintiff's limited activities at the time of the hearing ("she experiences numerous limitations . . . including no longer being able to lift, stand for extended periods, take long walks, or bend . . . she requires assistance with personal care including bathing and dressing, is no longer able to bake, and has difficulties related to memory" (R. 30)); (2) her Xanax prescription for her anxiety attacks; (3) the fact that despite repeated recommendations to see a psychiatrist and a neurologist for further treatment of her anxiety, Plaintiff never attended psychiatric treatment and did not consult with a neurologist until 2010 (after the date last insured); and (4) treatment notes that indicate that

Plaintiff was diagnosed with obesity, hypertension, and herniated lumbosacral disc with no indication that any of these diagnoses individually or in combination subjected Plaintiff to more than minimal limitations in her functional abilities. (R. 30-31). The ALJ did not analyze the remaining factors: the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms (other than the Xanax he mentioned); and any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms during the relevant period. (R. 31). This was error. On remand, the ALJ should consider all relevant factors prior to assessing Plaintiff's credibility.

* * *

By failing to obtain clarification from Plaintiff's treating physician, Dr. Gulati, about the onset date and the extent of Plaintiff's alleged limitations during the alleged disability period, the ALJ failed to adequately develop the record. Moreover, the ALJ erred in finding Plaintiff not credible without first developing the record and considering all relevant factors. Absent such findings a remand is required.

## CONCLUSION

For the foregoing reasons, the Court remands the matter to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

s/SLT

/SANDRA L. TOWNES
United States District Judge

Dated: August 18, 2014
Brooklyn, New York